# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | | |
|---|---|---|
| Movement Mortgage, LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | 6:22-cv-00671-LSC |
| CIS Financial Services, Inc., and Paula Reeves, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OF OPINION

Long ago, the Philistines sought the secret to Samson's great strength. Ultimately, succumbing to the persistence and deceit of Delilah, Samson revealed that if anyone cut his hair—something forbidden by his Nazirite vow—he would "become weak, and be like any other man." As foretold, Samson lost his strength when Delilah "shave[d] off the seven locks of his head," and the Philistines took him captive.[1]

Secrets and subterfuge are also purported to be the root of this case. Movement Mortgage, LLC ("Movement") claims that CIS Financial Services, Inc. ("CIS") and one of its executives, Paula Reeves ("Reeves"), violated the Alabama Trade Secrets Act ("ATSA"), the federal Defend

---

[1] Samson, however, got the last laugh. *See Judges* 16:23–30.

Trades Secrets Act ("DTSA"), and the Computer Fraud and Abuse Act ("CFAA"). Movement also alleges that the Defendants conspired to misappropriate its trade secrets and tortiously interfered with its contractual relations. The Defendants move for summary judgment on all claims. For the following reasons, this motion is due to be GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND[2]

Movement and CIS are rival mortgage companies, and Reeves is a longtime CIS executive. (Doc. 41 at 4.) In 2019, Reeves struck up a friendship with Tony Joyce, with whom she "enjoyed a social or romantic relationship over the next few years." (*Id*.) In early 2020, Joyce began working for CIS as a benefits coordinator, and by the end of the year, he obtained a loan officer license. (*Id*.) Reeves then contacted the manager of Movement's Birmingham office and recommended Joyce for a job

---

[2] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record . . .").

interview. (*Id.*) Movement showed interest in hiring Joyce as a loan officer and sent him proposed compensation terms. (*Id.*) Joyce forwarded Reeves "an email . . . outlining those proposed terms, labeling the email CONFIDENTIAL-PAULA ONLY." (*Id.* at 4–5.) In January 2021, Movement hired Joyce as a loan officer—a position he held for about six months.[3] (*Id.* at 5; doc. 50-13 at 2.) "CIS continued to employ Joyce while he was a loan officer at Movement" and paid him at least $20,000. (Doc. 41 at 8.) During his tenure at Movement, Joyce never closed a loan on its behalf. (*Id.*)

Movement's "signature marketing pitch is the 6-7-1 Process." (*Id.* at 6.) "The pitch is that Movement can expedite a loan closing by underwriting a loan file within six hours, fully process the loan file within seven days, and . . . have the loan file ready to go to closing within one day." (*Id.* at 6–7.) To teach this process to loan officers and other personnel, Movement uses a 355-page Training Manual ("the Manual"), which Movement updates approximately eight times a year. (*Id.* at 7.)

---

[3] Movement officially terminated Joyce in June 2021. (*See* doc. 50-13 at 2.) The Defendants claim that Joyce effectively resigned in April 2021. (*See* doc. 52 at 6–7.)

Movement requires employees to execute confidentiality agreements before they receive access to the Manual. (*Id.*)

Reeves obtained a copy of the Manual through Joyce and shared its contents with CIS's Vice President and Director of Innovation, Kyle Senkbeil ("Senkbeil"). (*Id.* at 8.) In Senkbeil's description, the Manual outlines Movement's "whole workflow for their salesperson beginning to end." (Doc. 50-2 at 19.)[4] Senkbeil subsequently shared the Manual with CIS's loan processing supervisor. (Doc. 41 at 9.) Reeves acknowledged that she made a "mistake" in taking the Manual from Joyce. (*Id.*)

## II.  STANDARD OF REVIEW

---

[4] The Defendants seek to exclude Senkbeil's deposition as well as his text messages with Reeves—both were produced during discovery in a separate action in state court. Defendants argue that Rule 804 of the Federal Rules of Evidence bars the Court's consideration of Senkbeil's deposition because "Movement makes no showing that Senkbeil is unavailable within the meaning of Rule 804, and indeed did not seek to depose Senkbeil in this action." (Doc. 52 at 17.) At the summary judgment stage, the key question is whether evidence "can be reduced to admissible form at trial." *Pritchard v. Southern Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996). Presumably, Senkbeil can testify at trial. His unavailability would only matter if Movement offered his deposition testimony at trial instead of his live testimony. Defendants also object to Senkbeil's text messages because Movement did not authenticate the messages with an attached affidavit. Rule 56 of the Federal Rules of Civil Procedure does not impose an affidavit-only authentication requirement. Senkbeil authenticated these messages in his deposition, so in ruling on this motion, the Court may properly consider them. *Cf. Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (explaining that Rule 56 "expressly contemplates that affidavits are only one way to support a fact; documents . . . declarations, [and] other materials are also supportive of facts.") (citation and quotation marks omitted) (alterations in original).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (per curiam) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)).

In a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III. DISCUSSION

### A. ATSA & DTSA

The ATSA "provides for the recovery of 'actual damages' suffered as a result of a 'misappropriation' of a trade secret, as well as exemplary damages for a willful and malicious misappropriation." *Systrends, Inc. v. Grp. 8760, LLC*, 959 So. 2d 1052, 1065 (Ala. 2006) (quoting Ala. Code § 8-27-4). Under the ATSA, a trade secret is information that:

> a. Is used or intended for use in a trade or business;
> b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
> c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
> d. Cannot be readily ascertained or derived from publicly available information;
> e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
> f. Has significant economic value.

Ala. Code § 8–27–2(1). Similarly, the DTSA protects:

> [A]ll forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if-- (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by,

>another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3) (2016). Because the language of the two statutes is "nearly identical," this Court—as both parties do—will discuss the statutes together. *See Parker v. Petrovics*, No. 2:19-CV-00699-RDP, 2020 WL 3972761, at *4 (N.D. Ala. July 14, 2020).

The Defendants contend that Movement's ATSA and DTSA claims fail for these reasons (more or less): 1) Movement failed to properly identify trade secrets within the Manual; 2) some or all the information within the Manual is publicly available; 3) Movement's efforts to protect the secrecy of the Manual were insufficient; 4) Movement failed to prove that it suffered any damage from the alleged misappropriation of the Manual.

Movement asserts that the entire Manual is a trade secret because it is a compilation of materials that gives Movement a competitive advantage over its rivals. Movement's designated corporate representative, Trasi King, attested to this claim in her deposition. (*See* doc. 51-1 – Sealed.) As she explained, the Manual contains some information that is generally known within the mortgage industry, but in its entirety, the Manual outlines a unique method that allows

Movement to process loans more efficiently than its competitors. Having reviewed the sealed portions of King's deposition, the Court finds that this issue presents a genuine dispute of material fact. King's testimony is opaque in places, but she ultimately describes the distinctive features of the Manual with sufficient particularity to require that a jury decide if the Manual is a trade secret.

Similarly, the fact that the Manual contains publicly available information does not doom Movement's trade secrets claims. The critical issue is whether the Manual contains "a unique combination of that information, which adds value to the information." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003). As before, this question must be left for a jury.

In addition, Movement's efforts to protect the secrecy of the Manual are reasonable enough to withstand summary judgment. Most importantly, Movement required all employees to sign confidentiality agreements. *See Physiotherapy Assocs., Inc. v. ATI Holdings, LLC*, 592 F. Supp. 3d 1032, 1041 (N.D. Ala. 2022) ("[C]ourts have identified two efforts at secrecy that typically meet the mark under the ATSA. The first is the company's requirement that employees sign a confidentiality

agreement."); *Ex parte W.L. Halsey Grocery Co.*, 897 So. 2d 1028, 1034–35 (Ala. 2004) ("Halsey's actions in requiring employees to sign the nonsolicitation agreement informing the employees of the confidential nature of the information to which the employee will be exposed sufficiently reflect efforts that are reasonable under the circumstances to maintain [the] secrecy of Halsey's information.") (citation and quotation marks omitted); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 898 F.3d 1279, 1300–01 (11th Cir. 2018) (finding significant the plaintiff's failure to procure a signed confidentiality agreement).

Movement's confidentiality agreement specifically mentions training manuals, and employees were required to acknowledge that any unauthorized disclosure of confidential information "would cause substantial and irreparable harm to the Company." (Doc. 50-3 at 6.) The Movement employee handbook, moreover, includes a separate confidentiality provision. Granted, as Defendants point out, Movement's efforts to safeguard the Manual were not necessarily exemplary. For instance, during the relevant time period, Movement failed to "designate the Manual itself as 'confidential.'" (Doc. 43 at 44.) Nonetheless, the

Court cannot say as a matter of law that Movement's efforts to protect the Manual were unreasonable under the circumstances.

Movement also points to sufficient evidence of damage flowing from the Defendants' alleged misappropriation of the Manual. Senkbeil testified that—at Reeves' direction—he implemented ideas from the Manual, thereby depriving Movement of the exclusive benefit of the Manual. (Doc. 50-2 at 31; 49); *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892, 914 (3d Cir. 2021) (finding that loss of "the exclusive use of trade secret information . . . is a real and redressable harm."). Further, Movement has produced evidence of the Manual's development costs, which can function as a proxy for a plaintiff's damages in trade secrets cases. *See id.* at 913–14; *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 280 (5th Cir. 2012); *Univ. Computing Co. v. Lykes–Youngstown Corp.*, 504 F.2d 518, 535–36 (5th Cir. 1974).

Accordingly, Movement's ATSA and DTSA claims survive summary judgment.

**B. Conspiracy to Misappropriate Trade Secrets**

In their motion for summary judgment, the Defendants argue that Movement's conspiracy claims "fail[] for want of a viable underlying

cause of action." (Doc. 43 at 50.) Given the viability of the ATSA and DTSA claims, Movement's conspiracy claims likewise survive summary judgment.

**C. Tortious Interference with a Contractual Relationship**

"In order to prevail on a claim of tortious interference, a plaintiff must establish: (1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Nucor Steel Tuscaloosa, Inc. v. Zurich Am. Ins.*, 343 So. 3d 458, 476 (Ala. 2021) (quoting *White Sands Grp., LLC v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009)). Movement concedes that the ATSA preempts a tortious interference claim to the extent such a claim is premised on the misappropriation of trade secrets. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) ("[T]he legislature intended for the [ATSA] to replace common law tort remedies for the misappropriation of trade secrets."). But Movement argues that its tortious interference claim is not preempted because it is based on Defendants' other actions "to induce Joyce into breaching a valid contract with Movement," such as encouraging Joyce to share non-trade secret information. (Doc. 49 at 66.)

The Defendants, however, take a broader view of the ATSA's preemptive scope, claiming that the ATSA "preempts all claims based upon the unauthorized use of information, even if the information does not meet the statutory definition of a trade secret." *See Petrovics*, 2020 WL 3972761, at *11 (citation and quotation marks omitted).

The parties do not cite—and the Court is unaware of—any binding authority that delimits the ATSA's preemptive effect. Although other district courts have reached contrary conclusions, this Court nonetheless prefers Movement's narrower interpretation because the Defendants fail to show that the ATSA's text sweeps as broadly as they claim. Therefore, while Movement's tortious interference claim is preempted to the extent it is duplicative of the ATSA claim, it is not entirely preempted.

The Defendants also argue that Movement cannot satisfy the second and fifth elements of a tortious interference claim. As to the second element, a reasonable factfinder could infer that the Defendants were aware of a protectible business or contractual relationship. Senkbeil, for example, sent Reeves this text message: "You think you could access movement hub? I'd like to see the uw procedures and processing etc." (Doc. 50-6 at 34.) Reeves responded: "If Tony was here I

could. But he's not. Sorry. He says they've got so much security and tracking on their systems that he has to be careful. He would have to be logged in on his computer and lord knows he can't forward anything[.] They've got him scared to death[.]" (*Id.*) This message (among others conveying similar content) indicates that Reeves knew of Joyce's obligation to protect Movement's confidential information.

With respect to damages—the fifth element, Movement fails to explain the nature or quantity of its non-preempted damages (i.e., damages from Defendants' alleged misappropriation of non-trade secret information). But the Court will not dismiss Movement's intentional interference claim on this ground because a jury could properly award nominal damages "in recognition of the invasion of the legal rights of the plaintiff." *Roberson v. C.P. Allen Constr. Co., Inc.*, 50 So. 3d 471, 477 (Ala. Civ. App. 2010).

### D. CFAA

"Whoever . . . intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer violates the CFAA." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017) (citing

18 U.S.C. § 1030(a)(2)(C)). The CFAA's "statutory definition includes two separate types of loss: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* at 1174. A plaintiff's loss must amount to "at least $5,000 in value." 18 U.S.C. § 1030(c)(4)(A)(i)(I).

Even if Movement could demonstrate that the Defendants intentionally accessed its computer network without authorization, Movement fails to explain how its loss, as defined by the CFAA, amounts to at least $5,000. In the section of its brief devoted to CFAA damages, Movement argued no evidence of the costs it incurred in response to the Defendants' alleged unauthorized access. Accordingly, the Court will dismiss Movement's CFAA claim.[5]

---

[5] Furthermore, the Court doubts that Movement provides sufficient support for its claim that the Defendants accessed its computer network without authorization. In an attempt to support its CFAA claim, Movement relies on a handful of ambiguous text messages from Reeves. (*See* doc. 49 at 75–76; doc. 50-6 at 20–26.) The text messages certainly raise an inference of general malfeasance and provide evidence that Joyce shared information from his virtual training sessions with Reeves. But bereft of additional evidence that fleshes out the import of the messages, a reasonable factfinder probably could not conclude that the Defendants intentionally accessed

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is due to be GRANTED IN PART and DENIED IN PART. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on April 20, 2023.

L. Scott Coogler
United States District Judge

211211

---

Movement's computer system. *See Melton*, 841 F.3d at 1219 ("Inferences based on speculation and a mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment.") (citation and quotation marks omitted).